ARDISAM, INC., d/b/a Yukon Tracks and Spring Form, Inc., Plaintiffs,

v.

AMERISTEP, INC., Hunter's View, Ltd. and Eastman Outdoors, Defendants.

No. 03–C–553–C.

United States District Court, W.D. Wisconsin.

Aug. 2, 2004.

See also 302 F.Supp.2d 991.

Jon G. Furlow, Karna A. Berg, for Plaintiffs.

William F. Bauer, Coyne, Niess, Schultz, Becker & Bauer, Paul W. Schwarzenbart, Lee, Kilkelly, Paulson & Younger, Eugenia G. Carter, La Follette, Godfrey & Kahn, S.C., Madison, WI, Marshall G. Macfarlane, Young & Basile, P.C., Ann Arbor, MI, Anthony J. Kane, Terhaar, Archibald, Pfefferle & Griebel, LLP, Minneapolis, MN, Angelo J. Bufalino, Vedder, Price, Kaufman & Kammholz, Chicago, IL, Kristin L. Murphy, Rader, Fishman & Grauer, Bloomfield Hills, MI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for declaratory, monetary and injunctive relief, plaintiffs Ardisam, Inc. and Spring Form, Inc. contend that defendants Ameristep, Inc., Hunter's View, Ltd. and Eastman Outdoors infringed plaintiffs' U.S. Patent No. 5,038,812 (the '812 patent) by making, using, selling and offering for sale hunting blinds that utilize and embody the patented invention, which is a "quickly erectable, quickly collapsible, self supporting portable structure." Plaintiffs bring their claim under 35 U.S.C. § 271. Jurisdiction is present. 28 U.S.C. §§ 1331 and 1338.

Presently before the court are 1) the motion of plaintiffs Ardisam, Inc. and Spring Form, Inc. for partial summary judgment of infringement of the '812 patent; 2) defendant Ameristep, Inc.'s motion for summary judgment for non-infringement; 3) defendant Hunter's View, Ltd.'s motion for summary judgment for non-infringement; 4) defendant Eastman Outdoors' motion for summary judgment for non-infringement and invalidity of the '812 patent's claim 19; 5) defendants' joint motion to strike the June 4, 2004 declaration of plaintiffs' expert, Brooks Johnson; and 6) plaintiffs' motion to stay consideration of the parties' cross motions for summary judgment. In addition, plaintiffs object to defendant Ameristep's use of Michael S. Sherrill's and Wayne D. Milestone's expert reports, defendant Eastman Outdoors' use

of Jeffrey Pestrue's declaration, defendant Ameristep's use of Ryan Kubica's declaration and defendant Hunter's View's use of the Douglas Smith's declaration. Defendants ask the court to strike the affidavit of Gerald E. Helget, submitted in response to defendants' motions for summary judgment. I construe the parties' objections to these various witnesses as motions to strike.

The crux of this case is whether defendants' accused products have a "top left part" and "top right part" and therefore, infringe the '812 patent under 35 U.S.C. § 112, ¶ 6. I construe the claim limitation "first means for confining the frame ... the first means having a top left part and a top right part," found in asserted, independent claims 1 and 19 of the '812 patent, to mean a pocket formed of foldable material confining the frame with the pocket having two straight edges, one on the right side of the side member's pocket and the other on the left side of the side member's pocket, with the straight edges directed toward each other and flanked by two angles in the pocketed frame, with the angle between the two straight edges located nearest the apex of the assembled portable structure. I define "angle" as "a projected corner."

Because the pocketed frames of the accused products are circular and therefore achieve a substantially different shape from that of the pocketed frames of the '812 patent, I find no literal infringement of the '812 patent. For the same reason, I find that the accused products do not infringe the '812 patent under the doctrine of equivalents. As a result, I will grant defendants' motions for summary judgment and deny plaintiffs' motion for summary judgment. A finding of non-infringement renders moot the parties' motions to strike. In addition, plaintiffs' motion to stay and defendant Eastman Outdoors' motion for summary judgment

on the invalidity of claim 19 of the '812 patent will be denied as unnecessary.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *The Parties*

Plaintiff Spring Form, Inc. owns all rights and title to United States Patent No. 5,038,812 ('812 patent), which was filed on August 18, 1989 and issued on August 13, 1991 to inventor Lowell R. Norman. The invention at issue is a quickly erectable, quickly collapsible, self-supporting portable structure—in other words, it is a tent. Plaintiff Ardisam, Inc., d/b/a Yukon Tracks holds the exclusive license to manufacture and sell hunting and ice fishing blinds under the '812 patent. Hunting blinds are structures that hunters use to take shelter from the elements and to conceal themselves from their prey. Defendant Hunter's View is an Illinois corporation that makes, uses, sells and offers to sell a group of hunting blind products, including the Wigwam and the Lodge. Defendant Ameristep, Inc. is a Michigan corporation that makes, uses, sells and offers to sell a group of hunting blind products, including the Doghouse Blind, Doghouse TSC Blind, Doghouse TSC Reversible Blind, Roundhouse Blind and Penthouse TSC Blind. Defendant Eastman Outdoors is a Michigan corporation that makes, uses, sells and offers to sell a group of hunting blind products, including the Carbon Pop–Up RiverBottom Blind and the Magnum Carbon Pop–Up, which have the same construction but different sizes.

### B. *The '812 Patent*

The '812 patent discloses a claimed structure that may be placed in either an upstanding fully expanded configuration or in a stored folded down configuration. The '812 patent has 22 claims. Claims 1,

19 and 20 are independent claims; the remaining 19 are dependent. Plaintiffs contend that defendants infringe claims 1–8, 15, 18 and 19 of the '812 patent. Asserted independent claims 1 and 19 each possess the following claim limitation language:

[F]irst means for confining the frame, ... the first means having a top left part and a top right part.

[T]hird means for hinging a portion of the top right part of the first means of one side member to a portion of the top left part of the first means of one other side member.

Claim 1 contains the following claim limitation language:

[F]ourth means for holding the portable structure in the upstanding fully expanded configuration.

Claims 19 and 20 contain the following claim limitation language:

[F]ourth means for restraining each side member, for stabilizing the portable structure and for maintaining it in the upstanding fully expanded configuration.

The '812 patent contains the following illustration of an expanded single symmetrical side member in embodiment 100 of the specification:

FIG. 6

Figure 6:

is a top plan view of a single side member, 102, of embodiment 100 before the side member is assembled in the finished portable structure. Side member 102 comprises an independent continuous self expandable frame, 106, and a side panel, 108, formed from a foldable material. Frame 106 is slidably contained in pocket 110 thereby providing means for confining frame 106 ... Side member 102 and more particularly pocket 110 thereof has a top left part 120, a top right part 122, a bottom part 124 and a top part 126 which is best seen in FIG. 6.

When one assembles four of these side members and a floor panel, one creates embodiment 100 of the claimed invention, which appears as follows (top, front and right side perspective view):

FIG. I

"A" is the apex of the upstanding portable structure.

Another embodiment of an asymmetrical expanded single side member appears in the following illustration:

FIG. 19

Figure 19:

is a top plan view of a single side member 202 before it is assembled in the finished portable structure ... Side members 202 are hinged together in a similar manner as in embodiment 100, however, each side member is hinged to side members which are its mirror image thereby causing the fully expanded configuration structure to have a higher opening or doorway in the front and rear than on the left and right sides.

When one assembles this asymmetrical side member in the same manner as in embodiment 100 by hinging each side member to a side member that is its mirror image, one creates embodiment 200 of the patented invention. Embodiment 200 has a higher opening or door way in the front and rear than on the left and right sides, as illustrated in Figure 18 (top, front and right perspective view):

FIG. 18

Other embodiments disclosed in the '812 patent are illustrated as follows:

## FIG. 26

## FIG. 27

FIG. 28

FIG. 30

FIG. 31

### C. *Defendant Ameristep's Blinds*

Plaintiffs have alleged that defendant Ameristep's Doghouse, Penthouse and Roundhouse hunting blinds infringe the '812 patent. All three blind types are continuous and uninterrupted, are made of foldable fabric, are fully collapsible and expandable and portable. The frame members of the Penthouse and Doghouse blinds are of spring steel. The Penthouse and Doghouse blinds in the possession of plaintiffs' counsel both use a pocket formed from the shell fabric of the blind material to confine the frame. The pocket is formed by folding the fabric back on itself and stitching the bottom edge closed, thus creating a pocket that holds the frame. In the specimen Penthouse and Doghouse blinds, the pocket is attached to the fabric of the side panel by folding the shell material of the blind over on itself and stitching it down to the side panel.

The Penthouse and Doghouse blinds have four sides each. The Roundhouse has six sides. The photographs and specimens of all three of Ameristep's blind types show that there are no sharp angles or breaks of any kind in any of the frames, even when they are bent to form the collapsed version of the structure. The frames of all three series of blinds form a single loop in each side panel when expanded. When the frames are expanded the side panels of all three blinds are pulled taut to their frames. Below is a picture of defendant Ameristep's three types of blinds:

### The Doghouse

## The Penthouse

   

## The Roundhouse

  

### D. *Defendant Hunter's View's Blinds*

Prior to filing suit, plaintiffs had never possessed the Wigwam or the Lodge sold by Hunter's View. Nevertheless, they charged both products with infringement of the '812 patent. The Wigwam and the Lodge are structurally and functionally equivalent except for differences in dimension of scale. Both blind types are continuous and uninterrupted, made of foldable fabric, fully collapsible and expandable and portable. Each blind type has four sides. The frames are made of spring steel; these flexible rods have ends that fit into pockets in opposite corners. The pocket is created by stitching. The pocket of the blinds is attached to the fabric of the side panel by folding the shell material of the blind over on itself and stitching it down to the side panel. Both blinds can stand in an upright configuration without the flexible rods installed. When the frames of the blinds are expanded the side panel is pulled taut to the frame.

Both the Wigwam and the Lodge contain a piece of fabric covering the space between the side members and the ground. The photographs from Hunter's View's literature show that there are no sharp angles or breaks of any kind in any of the frames, even when they are bent to form the collapsed version of the structure. The frames of both blinds form a single loop in each side panel when expanded.

Below are pictures of the Wigwam and the Lodge:

### The Lodge

### The Wigwam

E. *Defendant Eastman Outdoors' Blinds*

Plaintiffs contend that Eastman's River-bottom and Magnum blinds infringe the '812 patent. These two blind types have four model numbers. The only differences among the four model numbers are size and the inclusion (or absence) of Eastman's removable Safari System® foliage. Both blind types are continuous and uninterrupted, are made of foldable fabric, are fully collapsible and expandable and portable. All of Eastman's accused blinds include four circular side panels, each of which has a sleeve that contains a steel

band. Each sleeve surrounds the periphery of a side panel. A vertical strip of material extends between each adjacent sleeve of the side panels. The strip of material has a top portion that expands outwardly and is connected to a roof portion of the blind. The roof portion is attached along the top periphery of the side panels and is connected to the top portion of the strip of material. The widened-out top portion of the strip of material spaces the side panels away from one another such that the upper parts of adjacent side panels diverge from one another. The strip of material includes a bottom portion that is integrally connected to a bottom curtain. The bottom curtain widens out at the bottom portions of adjacent side panels. When the frame of the blinds is expanded, the side panel is pulled taut to the frame.

The blinds use a pocket formed from the shell fabric of the blind material to confine the frame. The blinds have stitching that attaches the side panels to the frame pockets. The pocket is shown in the photos below. It has top left and top right parts, being the upper left and right quadrants of the side member frame.

## The Magnum

## The Riverbottom

## OPINION

### A. Claim Construction

#### 1. Applicable standards

■ The first task for the court in patent infringement cases is to construe the disputed claims. Since 1996, when the Supreme Court affirmed the Federal Circuit's decision in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), it has been clear that judges, not juries, have the responsibility to construe disputed terms in patent claims. *Markman*, 517 U.S. at 388–90, 116 S.Ct. 1384. The responsibility is a heavy one. In practice, the determination of the scope of the invention is often the end game.

"The language of the claim defines the scope of the protected invention." *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619 (Fed.Cir.1995) (citing *Yale Lock Manufacturing Co. v. Greenleaf*, 117 U.S. 554, 559, 6 S.Ct. 846, 29 L.Ed. 952 (1886)). The language serves to delineate the virtual metes and bounds of the invention, letting competitors know what they can and cannot do in the way of making and selling similar products.

■ Claim construction must adhere carefully to the precise language of the claims that the patent officer has allowed. *Autogiro Co. of America v. United States*, 181 Ct.Cl. 55, 384 F.2d 391, 396 (1967) ("Courts can neither broaden nor narrow the claims to give the patentee something different than what he set forth [in the claim]."). For this reason, " 'resort must be had in the first instance to the words of the claim,' words to which we ascribe their ordinary meaning unless it appears the inventor used them otherwise." *Bell Communications Research, Inc.*, 55 F.3d at 619 (quoting *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed.Cir.1984)). It

is equally "fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention." *United States v. Adams*, 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); *see also Markman*, 52 F.3d at 979 ("Claims must be read in view of the specification, of which they are a part.... For claim construction purposes, the [specification's] description may act as a sort of dictionary, which explains the invention and may define terms used in the claims."). The specification is " 'necessary to give life, meaning, and vitality' " to the terms of a claim. *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1306 (Fed.Cir.1999) (quoting *Kropa v. Robie*, 38 C.C.P.A. 858, 187 F.2d 150, 152 (1951)). In general, "limitations from the specification are not to be read into the claims." *Golight, Inc. v. Wal–Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed.Cir.2004). "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.' " *Liebel–Flarsheim Company v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed.Cir.2004).

■ In recent cases, the Court of Appeals for the Federal Circuit has reminded district courts of the usefulness of dictionaries, treatises and encyclopedias in determining the ordinary and customary meanings of claim terms. *See, e.g., Inverness Medical Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1369 (Fed.Cir.2002) ("It is well settled that dictionaries provide evidence of a claim term's 'ordinary meaning.' Such dictionaries include dictionaries of the English language, which in most cases will provide the proper definitions and usages, and technical dictionaries, encyclopedias

and treatises, which may be used for established specialized meanings in particular fields of art."); *but see Vanderlande Industries Nederland v. International Trade Commission*, 366 F.3d 1311, 1321 (Fed.Cir.2004) ("a general-usage dictionary cannot overcome credible art-specific evidence of the meaning or lack of meaning of a claim term"). At the same time, the court has advised trial judges that they must examine the intrinsic record carefully. The patent applicant may not have used words consistent with the dictionary definition because an applicant can act as his or her own lexicographer or may disavow or disclaim aspects of a definition "by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Golight*, 355 F.3d at 1331 (citing *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed.Cir.2002)).

■ At issue are independent claims 1 and 19 of the '812 patent. Claim limitations drafted pursuant to 35 U.S.C. § 112, ¶ 6 are termed means-plus-function limitations; the parties do not dispute that the claims at issue are expressed in the "means-plus-function" format. Section 112, ¶ 6 provides that such limitations "shall be construed to cover the corresponding structure ... described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. "Drafters of means-plus-function claim limitations are statutorily guaranteed a range of equivalents extending beyond that which is explicitly disclosed in the patent document itself." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1347 (Fed.Cir.2001). Structural equivalence under § 112, ¶ 6 is "an application of the doctrine of equivalents ... in a restrictive role." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (emphasis added).

"The 'means' term in a means-plus-function limitation is essentially a generic reference for the corresponding structure disclosed in the specification." *Chiuminatta Concrete Concepts v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1308 (Fed.Cir.1998). Under § 112, ¶ 6, "an applicant can describe an element of his invention by the result accomplished or the function served, rather than describing the item or element to be used (for example, 'a means of connecting Part A to Part B,' rather than 'a two-penny nail')." *Warner–Jenkinson*, 520 U.S. at 27, 117 S.Ct. 1040. "A determination of corresponding structure, therefore, is a determination of the meaning of the 'means' term in the claim and is thus also a matter of claim construction." *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed.Cir.1998); *B. Braun Medical v. Abbott Laboratories.*, 124 F.3d 1419, 1424–25 (Fed.Cir.1997) (determining de novo which structures disclosed in specification corresponded to means limitation).

2. *Claim construction of "first means for confining the frame, the first means having a top left part and a top right part"*

■ The '812 patent recites this language in asserted independent claims 1 and 19. The parties agree that the court should construe this claim element as a means-plus-function limitation, that the function of the first means is "confining the frame" and that the corresponding structure or "means" for this function, identified in the specification, is a "pocket" "formed from a foldable material." '812 Pat., col. 5, lns. 67–68 and col. 6, lns. 1–3; Dft.'s Br., dkt. # 46, at 8; Dft.'s Br., dkt. # 51, at 10–12; Dft.'s Br., dkt. # 56, at 9–10; Plts.' Br., dkt. # 62, at 18. A further limitation on this claim element is the requirement that the pocket confining the frame have a "top left part" and a "top right part." The parties dispute the meaning of these terms. Defendants ar-

gue that the word "top" refers to the uppermost or highest point of the right or left side of the pocket confining the frame. Plaintiffs disagree and contend that according to illustrations 2, 3, 5, 6–8 and 19 in the specification, "top left" and "top right" are not the highest points of the pocket sides but rather a "general area of the frame which is in the upper left or right part of the frame when the entire structure is in its upstanding mode." Plts.' Br., dkt. # 62, at 18

Because the "top left part" and "top right part" terms are part of a means-plus-function limitation, it is necessary to consider the structure as disclosed in the '812 patent's specification when construing the meaning of such limitations. 35 U.S.C. § 112, ¶ 6; *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366–67 (Fed.Cir. 2002) (court may constrict ordinary meaning of claim term in at least one of four ways: 1) if patentee acted as own lexicographer and clearly set forth definition of disputed claim term in either the specification or prosecution history; 2) if intrinsic evidence shows patentee distinguished term from prior art on basis of particular embodiment, expressly disclaimed subject matter or described particular embodiment as important to invention; 3) if term chosen by patentee deprives claim of clarity as to require resort to other intrinsic evidence for definite meaning; and 4) *as matter of statutory authority, claim term will cover nothing more than corresponding structure or step disclosed in specification, as well as equivalents thereof, if patentee phrased claim in step- or means-plus-function format* ) (emphasis added)). Two examples of the corresponding structure of the confining function are figures 6 and 19 in the '812 patent:

882

FIG. 6

FIG. 19

It is undisputed that the '812 patent calls for assembling the side panels with a "third means for hinging a *portion* of the top right part of the first means of one side member to a *portion* of the top left part of the first means of one other side member" (emphasis added). Plaintiffs point out that the Court of Appeals for the Federal Circuit has recognized "portion" as a word used to define an area that has particular boundaries. Plts.' Br., dkt. # 88, at 3 (citing *Benetton Sportsystem USA, Inc. v. First Team Sports, Inc.*, 38 Fed. Appx. 599, 608 (Fed.Cir.2002)). *Web-*

ster's *New World College Dictionary* (4th ed.2001) defines "portion" as "a part or limited quantity of anything." The *Oxford English Dictionary Online* defines "portion" as "a part of any whole." Therefore, the third means of claim 1 requires one to hinge only a part of the whole "top left part" and "top right part." By defining the top left and right parts of the pocketed frame as the highest or uppermost parts, one creates difficulty in determining where the highest or uppermost part begins and where it ends. To make the location of the "top left part" and "top right part" more clear, these top parts must be defined by boundaries. Hence, I agree with plaintiffs' argument that the third means in claim 1 of the '812 patent refers to a hinge in an area with boundaries rather than the highest or uppermost position of the pocketed frame.

According to the '812 patent specification, one can distinguish the boundaries of the top left and right parts of the pocketed frame most easily as lying between two angles. For example, figures 6 and 19 show side members comprising pockets 110 confining frame 106, with two straight edges of the pocketed frame, one on the right side of the side member and the other on the left side of the side member. The straight edges are directed toward each other and each straight edge is flanked by two angles. The middle angle separating the two straight edges is nearest apex "A," shown in figure 18, for example, once the side members are assembled in the finished portable structure. *Webster's New World College Dictionary* (4th ed.2001) defines "angle" as "a sharp or projecting corner." The *Oxford English Dictionary Online* defines "angle" as "a projecting corner."

One can characterize the angles flanking the straight edges in figures 6 and 19 as "projecting corners." It is the two straight edges located in between two an-

gles that constitute the "top left part" 120 and "top right part" 122 in figures 6 and 19. Each of the other embodiments in the specification (figures 20, 25, 26, 27, 28, 30 and 31) show "top right parts" and "top left parts" that are similar to the "top left part" 120 and "top right part" 122 in figures 6 and 19, that is, each of the other embodiments shows two straight edges in the confined frame, one on the right side of the frame and the other on the left side of the frame, that are directed toward each other and that are flanked by two angles each, with the angle between the two straight edges nearest apex "A." Although in some of the figures the angles separating the two straight edges do not appear "sharp," the angles distinctly project out from the pocketed frame.

Plaintiffs suggest that one define the top left or right part of a pocketed frame as the highest or uppermost point of the side member or as the quadrant above the midpoint of the side member (when the structure is in upstanding mode). I have noted already that defining the top left or right part of the pocketed frame as the highest or uppermost point of the side member does not help to determine where those parts begin or end. In addition, plaintiffs' suggestion of using the side member's midpoint as part of the definition does not correspond to the structure described in the specification. For example, it is undisputed that the '812 patent calls for assembling the side panels shown in figure 19 in the same manner as in embodiment 100 (shown in figure 1) by hinging each side member to side members that are its mirror image so that the fully expanded configuration structure has a higher opening or door way in the front and rear than on the left and right sides. According to asserted claims 1 and 19, this assembly requires hinging a portion of the top right part of the first means (that is, the pocket) of one side member to a portion of the top

left part of the first means of one other side member. When one hinges a portion of the top right part of side member 122 of figure 19 to its mirror image side member, the connection between the two side members appears as in figure 18.

FIG. 18

There is nothing in figures 18 and 19 that suggests that the midpoint of the side member plays any role in defining where hinging should occur. Rather, figure 18 reinforces the idea that the straight edges flanked by two "angles" or "projecting corners" define the area in which one hinges portions of the two side members together.

Therefore, I construe "first means for confining the frame ... the first means having a top left part and a top right part" to mean a pocket formed of foldable material confining the frame with the pocket having two straight edges, one on the right side of the side member's pocket and the other on the left side of the side member's pocket, that are directed toward each other and are flanked by two angles in the pocketed frame, with the angle between the two straight edges located nearest the apex of the assembled portable structure. I define "angle" to mean "a projected corner."

### B. *Infringement*

■ Once claim construction is complete, an infringement analysis requires "a comparison of the properly construed claims with the allegedly infringing device or method to determine whether the device or method embodies every limitation in the claims." *IMS Technology, Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed.Cir.2000). Whether infringement of an accused product occurs either literally or under the doctrine of equivalents is a question of fact. *Id.*

■ Although the parties dispute other claim terms in the '812 patent, it is unnecessary to discuss those terms if the accused products do not contain the limitation "first means for confining the frame ... the first means having a top left part and a top right part," found in asserted independent claims 1 and 19. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed.Cir.1999) (device infringes patent claim if it contains every limitation set forth in that claim, either literally or by equivalence). Plaintiffs argue that defendants literally infringe claim 1 of the '812 patent only (reserving the right to assert infringement of claim 19 or any of the dependent claims if the court rejects their motion for partial summary judgment). Defendants contend that the accused products do not infringe the asserted claims in the '812 patent either literally or under the doctrine of equivalents.

### 1. *Literal infringement*

"Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1267 (Fed.Cir.1999). Structural equivalence under § 112, ¶ 6 is met only if the differences between the accused structure and the patented invention are insubstantial. *Id.* To be insubstantial, the accused equivalent structure must perform the claimed function "in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification." *Id.*

It is undisputed that each of defendants' products includes a pocket or sleeve that confines the frame. Therefore, I will assume that the accused products have an equivalent structure, that is, a pocket, that confines the frame in substantially the same way to plaintiffs' product described in the '812 patent. Defendants deny, however, that their pocketed frame has an equivalent "top left part" and a "top right part." Specifically, defendants point out that their frames are circular in nature when confined by the pocket. Each of the accused products is shown in the photographs below:

### The Doghouse

   

### The Penthouse

  

## The Roundhouse

  

## The Wigwam

## The Lodge

## The Magnum

 

## The Riverbottom

According to the photographs, none of the accused blinds have a "top left part" or "top right part" as defined in the claim construction. That is, none of the photographs show an accused product with a pocketed frame that has two straight edges; one on the right side of the side member's pocket and the other on the left side of the side member's pocket, directed toward each other and flanked by two

angles in the pocketed frame, with the angle between the two straight edges located nearest the apex of the assembled portable structure. Rather, each of the pocketed frames in the accused products is circular in nature. In addition, it is undisputed that all of defendant Eastman Outdoors' accused blinds include four *circular* side panels. Because of this circular shape, no reasonable jury could find that the pocketed frames in the accused products have distinct angles or straight edges from which one can discern a "top left part" or "top right part;" the accused products lack the projected corners as shown in each embodiment of the '812 patent. (Arguably, the photograph of defendant Hunter's View's "Lodge" product shows straight or "flattened" edges, but the photograph fails to show any distinct "angles" as defined in the claim construction.)

Thus, when one confines the circular frames of the accused products with a pocket, as dictated by claims 1 and 19 of the '812 patent, one achieves a substantially different result because the pocket lacks a discernible "top left part" and "top right part." The "top left part" and "top right part" of the pocketed frame in the '812 patent are defined by boundaries that guide someone reading the claim language of the '812 patent to an exact location for hinging different side members together.

Therefore, the resulting shape the pocket takes once it confines the frame in the '812 patent is an essential component of the pocket's structure. An essential structural component of a claimed invention is subject to a narrower range of equivalent structures under a § 112, ¶ 6 equivalence analysis than a structure of little or no importance. *IMS Technology,* 206 F.3d at 1436 ("[W]hen in a claimed 'means' limitation the disclosed physical structure is of little or no importance to the claimed invention, there may be a

broader range of equivalent structures than if the physical characteristics of the structure are critical in performing the claimed function in the context of the claimed invention."). Because other claim limitations in the '812 patent rely on the location of the top left and right parts of the pocket to determine where to hinge the side members together and because hinging the side members together is necessary to build the patented product, no reasonable jury could find that the resulting shape of the pocketed frame is an inessential component of the pocket's structure. Because the pocketed frames of the accused products are circular and therefore achieve a substantially different shape than the pocketed frames of the '812 patent, that is, one with no distinct angles, I find no structural equivalence between the pocketed frames of the accused products and those of the '812 patent. *Odetics,* 185 F.3d at 1267 (structural equivalence under § 112, ¶ 6 met only if accused equivalent structure performs claimed function in substantially same way to achieve *substantially same result* as corresponding structure described in specification) (emphasis added). Defendants do not literally infringe the '812 patent.

### 2. *Doctrine of equivalents*

■ Defendants argue that the accused products do not infringe the '812 patent under the doctrine of equivalents. "In the doctrine of equivalents context, the following test is often used: if the 'function, way, or result' of the assertedly substitute structure is substantially different from that described by the claim limitation, equivalence is not established." *Odetics,* 185 F.3d at 1267. I have determined that the shape of the pocketed frames of the accused products achieves a substantially different result from the shape of the pocketed frames shown in the '812 patent. Because of this substan-

tially different result, I find that the accused products do not infringe the '812 patent under the doctrine of equivalents. *See, e.g., Al–Site Corp. v. VSI International,* 174 F.3d 1308, 1321 (Fed.Cir.1999) (if accused product performs identical function yet avoids literal infringement for lack of § 112, ¶ 6 structural equivalent, it may well fail to infringe same functional element under doctrine of equivalents). Therefore, I will grant defendants' motions for summary judgment and deny plaintiffs' motion for partial summary judgment. Because I find no infringement of the '812 patent by any of the defendants, I will deny defendant Eastman Outdoors' motion for summary judgment that claim 19 of the '812 patent is invalid as unnecessary. In addition, a finding of noninfringement moots plaintiffs' request to reserve the right to assert infringement of claim 19 or any of the dependent claims.

### C.  *Motions to Strike*

Defendants move jointly to strike the June 4, 2004 declaration of plaintiffs' expert Brooks Johnson because it contains new theories of infringement that Johnson failed to disclose in his written report required under Fed.R.Civ.P. 26(a)(2)(B). In addition, plaintiffs object to defendant Ameristep's use of expert reports by Michael S. Sherrill and Wayne D. Milestone. Plaintiffs object also to defendant Eastman Outdoors' use of the declaration by Jeffrey Pestrue, defendant Ameristep's use of the declaration of Ryan Kubica and defendant Hunter's View's use of the declaration of Douglas Smith. Defendants Ameristep, Hunter's View and Eastman Outdoors ask the court to strike the affidavit of Gerald E. Helget, submitted in response to defendants' motions for summary judgment. Because I find from the undisputed facts that defendants' accused products do not infringe the '812 patent either literally or under the doctrine of equivalents, I will deny the parties' motions to strike the

testimony of these various witnesses as moot.

### D.  *Plaintiffs' Motion to Stay*

In a letter dated July 16, 2004, plaintiffs asked the court to stay the cross motions for summary judgment because of newly discovered evidence. Plaintiffs argue that defendant Eastman Outdoors made material false statements and misrepresentations in its summary judgment submissions regarding the strip of material separating the sleeve pockets in its accused products. *Id.* The function of the strip of material in defendant Eastman Outdoors' products is irrelevant to the question of the shape of the pocketed frame in the accused products, the basis on which I find that defendants do not infringe the '812 patent. Therefore, I will deny plaintiffs' motion to stay the summary judgment proceedings as unnecessary.

### ORDER

IT IS ORDERED that

1.  The motion for partial summary judgment filed by plaintiffs Ardisam, Inc. d/b/a Yukon Tracks and Spring Form, Inc. is DENIED;

2.  The motions for summary judgment filed by defendants Ameristep, Inc., Hunter's View, Ltd. and Eastman Outdoors are GRANTED;

3.  Defendant Eastman Outdoors' motion for summary judgment that claim 19 of the '812 patent is invalid is DENIED as unnecessary;

4.  Defendants' motions to strike the June 4, 2004 declaration of plaintiffs' expert Brooks Johnson and the affidavit of Gerald E. Helget and plaintiffs' motions to strike the declarations of Jeffrey Pestrue, Ryan Kubica and Douglas Smith are DENIED as moot;

5. Plaintiffs' motion to stay the summary judgment proceedings is DENIED as unnecessary;

6. The clerk of court is directed to enter judgment in favor of defendants and close this case.